UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL MOURNING, )<br>    *Plaintiff*, )<br> )<br>v. )<br> )<br>MARK A. ESPINOSA and UNITED )<br>FOOD AND COMMERCIAL WORKERS )<br>UNION LOCAL 919, )<br>    *Defendants*. ) | 3:24-CV-01379 (SVN)<br><br><br><br><br><br><br><br>August 1, 2025 |

## RULING ON DEFENDANTS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff Michael Mourning, proceeding *pro se*, has sued Defendants Mark A. Espinosa and United Food and Commercial Workers Union Local 919 ("UFCW") related to his termination from Stop & Shop Supermarket Company ("Stop & Shop"). Plaintiff appears to allege a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1]; a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2[2]; a hybrid claim under § 301 of the Labor Management Relations Act ("LMRA") that alleges a breach of the duty of fair representation ("hybrid § 301/DFR claim"); a breach of Article 11, Section 5 and Article 25 of the collective bargaining agreement ("CBA") between UFCW and his former employer, Stop & Shop; and unfair labor practices under Section 8 of the National Labor Relations Act. *See* Compl., ECF No. 1; Compl. Attach., ECF No. 1-1 ¶ 17. Succinctly, the complaint appears to allege that Plaintiff was wrongfully terminated by his former employer for failure to perform normal work duties, after which Defendants engaged in alleged bad faith representation in their attempts to resolve the

---

[1] In referencing the ADA in his complaint, Plaintiff cites § 12191. *See* ECF No. 1 at 2. This is not a section of the ADA. The Court construes this to be § 12101.
[2] Plaintiff cites § 2000-2. *See* ECF No. 1 at 2. As Title VII has no § 2000-2, the Court construes this to be § 2000e-2.

termination.

Defendants have moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim. Defs.' Mot. Dismiss, ECF No. 34. Plaintiff has failed to respond to the motion. For the reasons detailed below, the Court GRANTS Defendants' motion to dismiss.

## I. BACKGROUND

### A. Factual Background

The Court accepts the following allegations in Plaintiff's complaint as true for purposes of deciding Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was employed by Stop & Shop from 2009 to 2023. ECF No. 1-1 ¶¶ 4, 8. On or about July 8, 2022, he went on a medical leave of absence to have surgery on his left knee and right hip. *Id.* ¶ 6. Plaintiff's medical leave lasted until January 5, 2023. *Id.* ¶ 7. During this time, Stop & Shop made attempts to contact him, but he did not respond until about the third attempt, due to his change of address. *Id.* On or about May 5, 2023, Plaintiff was terminated due to his inability to resume normal work duties and failing to respond to the letters sent to him. *Id.* ¶ 8.

Plaintiff claims that he had until June 5, 2023, under the CBA to resume his normal work duties without being terminated. *Id.* ¶ 10. Article 11, Section 5(A) of the CBA between UFCW and Stop & Shop provides that an employee who "is unable to work due to sickness, accident, or pregnancy . . . shall be re-employed at such time as the employee is able to resume their normal duties," provided that the employee is able to resume such duties within six months. *Id.* ¶ 9. If the employee is unable to return within six months, the employer and the union are supposed to meet to discuss and resolve the timeline of the employee's return to work. *Id.*

On October 30, 2023, Plaintiff sent a letter, described as a "Complaint/Grievance," to UFCW regarding Secretary-Treasurer Jason Dokla's failure to protect Plaintiff from being terminated. *Id.* at 7. In the letter, Plaintiff also made various assertions concerning the Connecticut Family and Medical Leave Act ("CT FMLA"), including that he was entitled to additional leave under the act. *Id.* On November 1, 2023, Plaintiff sent another "Complaint/Grievance" to UFCW, this time regarding Business Agent Joanna Santana's alleged failure to prevent Plaintiff's termination. *Id.* at 6. Among other complaints in that letter, Plaintiff appears to claim that Santana failed to do anything with doctor's notes that he had provided her and that, had she provided the notes to Stop & Shop, he would have been able to retain his position. *Id.* at 6.

Also on November 1, 2023, Defendant Espinosa, President of UFCW, sent a letter responding to Plaintiff's October 30, 2023, letter. *Id.* at 12. In his letter, Espinosa stated, *inter alia*, that UFCW had represented Plaintiff's interests because Santana had filed a grievance with Stop & Shop in an attempt to reinstate Plaintiff and Dokla tried to convince Stop & Shop to "back date" Plaintiff's leave. *Id.* Plaintiff responded with a letter of his own on the same day, stating that had he been properly represented, Stop & Shop would not have been able to terminate him. *Id.* at 13. Lastly, Plaintiff received an additional letter dated January 31, 2024, from Espinosa stating that UFCW considered his matter officially closed, as well as a February 2, 2024, letter from Defendants' counsel reiterating the same. *Id.* at 21–22.

As noted above, Plaintiff's complaint appears to allege violations of Title VII and the ADA, a hybrid § 301/DFR claim, breach of the CBA, and unfair labor practices under the National Labor Relations Act. *See* ECF No. 1 at 4; ECF No. 1-1 ¶ 17. Defendants moved to dismiss the complaint in full on January 16, 2025. *See* ECF No. 34. The Court granted Plaintiff's motion for extension of time until February 21, 2025, to respond to the motion. *See* Order, ECF No. 39. Plaintiff later

requested an extension of the deadline until March 21, 2025, which the Court also granted. *See* Order, ECF No. 46. After Plaintiff missed his March 21, 2025, deadline to respond to Defendants' motion to dismiss, the Court *sua sponte* extended the deadline until April 4, 2025. *See* Order, ECF No. 47. Having still not received a response by April 18, 2025, the Court *sua sponte* temporarily suspended discovery in this matter pending resolution of the motion to dismiss. *See* Order, ECF No. 49. As of the date of this ruling, Plaintiff has not responded to Defendants' motion to dismiss. Given that Plaintiff has made no attempt to respond to the motion to dismiss in the months between his extended deadline and the date of this ruling, the Court considers the motion unopposed.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id*. In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.[3]

These pleading standards apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to pro se litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a pro se complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

Still, "[a]n unopposed motion to dismiss does not warrant automatic dismissal." *Suvak v. United States*, No. 12 Civ. 6004 (JCF), 2013 WL 2217171, at *2 (S.D.N.Y. May 21, 2013). The "sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000)). Accordingly, the Court is still required to evaluate the merits of the motion. *See id.*

---

[3] Because the Court concludes below that Plaintiff's failure to exhaust administrative remedies is not a jurisdictional defect, it does not elaborate on the standard for dismissing a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

**III.    DISCUSSION**

For the reasons described below, the Court grants Defendants' motion to dismiss in full.[4]

A.    Hybrid § 301/DFR claim

The Court first addresses the hybrid § 301/duty of fair representation ("DFR") claim Plaintiff appears to bring under the LMRA. The Court considers Plaintiff's complaint to raise this type of claim because, in addition to alleging "bad faith" representation by the union, he appears to also allege that Stop & Shop, his former employer, breached the CBA. *See* ECF No. 1-1 ¶¶ 8–10.

A hybrid § 301/duty of fair representation ("DFR") claim pairs a claim that the employer breached the collective bargaining agreement with a breach of the duty of fair representation claim against the union. *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178-79 (2d Cir. 2001). A plaintiff must prove both these claims to succeed. *Id.* at 178. "The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." *Id.* at 179. Indeed, what makes a claim hybrid is the "nature" of the claim, not the identity of the parties. *Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638*, 227 F.3d 29, 34 (2d Cir. 2000).

A hybrid § 301/DFR claim has a six-month statute of limitations, which begins to run when the employee knew or should have known of the breach of the duty of fair representation. 29 U.S.C. § 160(b); *Carrion*, 227 F.3d at 33; *see also Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 768 (2d Cir. 2009) (a claim for breach of the duty of fair representation against a union "must be filed within six months of the time when union members know or reasonably should know that a breach of that duty has occurred") (internal quotation marks omitted). Although a statute of

---

[4] As an initial matter, the Court finds Plaintiff has been given proper notice of the possible consequences of not responding to the motion to dismiss. Pursuant to Local Rule 12(a), Defendants have served him with the "Notice to Self-Represented Litigants Regarding Motions to Dismiss" and attached copies of the full text of Federal Rule of Civil Procedure 12 and Local Rule 7 in connection with their motion to dismiss papers. *See* Notice, ECF No. 34-2.

limitations is an affirmative defense, a complaint may be dismissed for failure to comply with the applicable statute of limitations if the defect is plain from the face of the complaint. *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015); *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

Here, Plaintiff's hybrid § 301/DFR claim is not timely. To start, Plaintiff was aware of any alleged breach of duty of fair representation at the latest on October 30, 2023. Plaintiff sent a letter to UFCW regarding Secretary-Treasurer Jason Dokla's alleged "failure to protect [his] job from being terminated for failure to turn over the necessary doctor notes to Stop and Shop" on that date. *See* ECF No. 1-1 at 7. Additionally, Plaintiff also sent a "Complaint / Grievance" to UFCW Local 919 on November 1, 2023, regarding Business Agent Joanna Santana's alleged "failure to protect [his] job from being terminated." *Id.* at 6. Thus, by the time he sent these letters, Plaintiff was aware of the alleged breach of duty of fair representation. Yet Plaintiff did not file his complaint in this action until August 26, 2024—just under ten months after his October 30, 2023, letter to UFCW. ECF No. 1. Therefore, his complaint was not filed within six months following the time he knew or reasonably should have known of the alleged breach. Because his hybrid § 301/DFR claim is time-barred, it must be dismissed.

Even if Plaintiff's hybrid § 301/DFR claim against UFCW were not time-barred, it must also be dismissed because Plaintiff fails to plausibly allege that the union breached its duty of fair representation. For a union to breach the duty of fair representation, its actions (or inaction) must be arbitrary, discriminatory, or taken in bad faith. *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (acknowledging that this rule applies to inaction as well). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's activities, the union's

7

behavior is so far out a 'wide range of reasonableness,' as to be irrational." *O'Neill*, 499 U.S. at 67 (citations omitted). A union acts in bad faith when its actions constitute "fraud, dishonesty, and other intentionally misleading conduct." *Vaughn*, 604 F.3d at 709 (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). And a union's acts are discriminatory "when substantial evidence indicates that it engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives." *Id.* (internal quotation marks omitted). Importantly, tactical errors, errors in judgment, and negligence do not give rise to a breach of the of duty of fair representation. *Barr v. United Parcel Services, Inc.*, 868 F.2d 36, 43-44 (2d Cir. 1989). "Any substantive examination of a union's performance, therefore, must be highly deferential[.]" *Air Line Pilots Ass'n*, 499 U.S. at 66. Indeed, "[a]s long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." *Guerrero v. FJC Sec. Serv. Inc.*, Nos. 12 Civ. 5763(SHS), 13 Civ. 1204(SHS), 2013 WL 5273795, at *8 (S.D.N.Y. Sep. 18, 2013) (quoting *Cook v. Pan American World Airways, Inc.*, 771 F.2d 635, 645 (2d Cir. 1985)).

     Plaintiff does not plausibly allege that UFCW breached its duty of fair representation under these standards. Plaintiff badly alleges that Defendants have engaged in "bad faith representation," *see* ECF No. 1 at 4, because agents of UFCW "fail[ed] to protect [his] job from being terminated" and "absolutely did nothing with doctor notes that [he] had provided," ECF No. 1-1 at 6. But even drawing all reasonable inferences in Plaintiff's favor—as the Court must on a motion to dismiss— and extending special solicitude to the *pro se* Plaintiff, the Court can discern no set of facts in the complaint demonstrating that the union acted inappropriately. While Plaintiff conclusorily claims Defendants acted in bad faith, he raises no facts which demonstrate "fraud, dishonesty, and other intentionally misleading conduct." *Vaughn*, 604 F.3d at 709. Further, Plaintiff does not appear to

dispute that UFCW engaged in efforts on his behalf with his former employer, and the attachments to his complaint acknowledge that at least Dokla took steps to assist him in negotiating with his employer, including by suggesting his employer "backdate" Plaintiff's leave. ECF No. 1-1 at 12. But even if those steps were not taken, Plaintiff still would not have alleged a breach of the duty of fair representation because he makes only conclusory allegations that fraudulent or dishonest conduct occurred. While the representation was apparently "unsatisfactory" to Plaintiff, *see id.* at 6–7, there are no facts alleged which plausibly demonstrate bad faith actions or inactions by UFCW. Nor does he attempt to allege that the union acted in an arbitrary or discriminatory manner.[5]

Insofar as Plaintiff's hybrid claim is brought against Espinosa, it fails for an additional reason: individual union members have immunity from claims for breach of the duty of fair representation. *Morris v. Loc. 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d. Cir 1989) (*per curiam*); *see also Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247–49 (1962) (union agents are not personally liable for their actions performed on the union's behalf in the collective bargaining process); *Maurer v. Trans World Airlines, Inc.*, 316 F. Supp.2d 84, 92 (D. Conn. 2003) ("Plaintiff may not sue individual union representatives for breach of a duty of fair representation"). Thus, Plaintiff's hybrid § 301/DFR claim against Espinosa is also dismissed for this additional reason.

Accordingly, Plaintiff's hybrid § 301/DFR claim is dismissed. This dismissal is without leave to amend, as it would be futile for Plaintiff to attempt to amend a claim that is clearly time-barred against both UFCW and Espinosa and that cannot be alleged at all against Espinosa as an

---

[5] Additionally, Plaintiff claims only punitive damages, *see* ECF No. 1 at 4, but "[punitive] damages may not be assessed against a union that breaches its duty of fair representation by failing properly to pursue a grievance." *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 52 (1979).

9

individual. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (acknowledging that although a *pro se* litigant's complaint should generally not be dismissed without granting leave to amend at least once when liberally construing the complaint gives "any indication" a valid claim may be stated, leave to amend is properly denied when the problem with the causes of action "[are] substantive" and "better pleading will not cure [them]").

B. Title VII and ADA Claims

Next, the Court dismisses Plaintiff's Title VII and ADA claims against Espinosa and UFCW. Although the Court does not dismiss these claims for failure to exhaust administrative remedies, they fail on other grounds.

*1. Exhaustion of Administrative Remedies*

To start, the Court cannot dismiss Plaintiff's complaint on the basis of lack of exhaustion of administrative remedies, as Defendants urge, because Plaintiff was not required to plead exhaustion in his complaint, and the complaint does not itself demonstrate lack of exhaustion on its face.

Before filing a Title VII or ADA claim in federal court, a plaintiff must first exhaust administrative remedies by filing a complaint with the Equal Opportunity Commission ("EEOC") or an equivalent state agency and obtaining a notice of right-to-sue. *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018); *see also Kaba v. Hope Home Care*, 23-CV-9512 (OEM) (LB), 2024 WL 1679327, at *2 (E.D.N.Y. Apr. 18, 2024) (citing *Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) (Title VII) and *Roy v. Buffalo Philharmonic Orchestra*, 684 F. App'x 22, 23 (2d Cir. 2017) (ADA)). Usually, the plaintiff is required to file the complaint with the EEOC within 180 days of the alleged discriminatory act. *Gupte v. Watertown Bd. of Educ.*, No. 3:17-cv-283 (JCH), 2017 WL 6629265,

at *3 (D. Conn. Nov. 7, 2017); 42 U.S.C. § 2000e-5(e)(1).[6] For states that have their own antidiscrimination agencies, however, a plaintiff who first files with the state agency has until 300 days after the alleged act to submit the complaint to the EEOC. *Id.* "A claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Because lack of exhaustion of administrative remedies is an affirmative defense, however, a plaintiff is not obligated to plead exhaustion in his complaint. *See Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 677 n.27 (S.D.N.Y. Jan. 3, 2025); *Ayala v. U.S. Postal Service*, 727 F. App'x 15, 17 (2d Cir. 2018) (summary order) ("a plaintiff need not plead exhaustion."). A court may dismiss a complaint "if it is evident from the face of the complaint that a plaintiff did not exhaust administrative remedies." *Delaney*, 761 F. Supp. 3d at 677 n.27. But if a complaint is silent as to exhaustion, it would be error to dismiss the complaint on lack of exhaustion grounds, because exhaustion is an affirmative defense a plaintiff is not required to plead. *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (finding district court erred in dismissing complaint "by holding that the exhaustion requirement is a pleading requirement incumbent on a Title VII plaintiff, rather than an affirmative defense"); *see also Simon v. Fed. Prison Indus. Inc.*, No. 23-CV-5125 (LJL), 2024 WL 3487940, at *6–7 (S.D.N.Y. July 18, 2024) ("Although a court may dismiss a complaint due to failure to exhaust administrative remedies when such failure is apparent from the face of the complaint, a plaintiff generally is not required affirmatively to plead exhaustion of administrative remedies.").

---

[6] While 42 U.S.C. § 2000e-5 is part of Title VII, the ADA expressly adopted these enforcement procedures. *See* 42 U.S.C. § 12117(a). Accordingly, the requirements for exhaustion of administrative remedies apply equally to ADA claims.

11

Thus, in contrast to the statute of limitations issue for Plaintiff's hybrid § 301/DFR claim—where the defense was plain from the face of the complaint and its attachments—Plaintiff's Title VII and ADA claims cannot be dismissed for failure to exhaust administrative remedies. Although Plaintiff's complaint does not mention exhaustion or receipt of a right-to-sue letter from the EEOC or a relevant state agency, this is not a basis for dismissal of his Title VII and ADA claims.[7]

2. UFCW

Even if Plaintiff has exhausted his administrative remedies, though, his Title VII and ADA claims fail against Defendant UFCW because he has not adequately pleaded such claims.

Title VII provides that it shall be an "unlawful employment practice" for a "labor organization" to discriminate against any individual because of his race, color, or sex, 42 U.S.C. § 2000e-2(c)(1). And the ADA prohibits covered entities, including unions, "from discriminating in employment against any qualified individual on the basis of disability." *Bledsoe v. N.Y.C. Transit Auth.*, 23-CV-00755 (HG) (JAM), 2024 WL 989845, at *2 (E.D.N.Y. Mar. 7, 2024). Discrimination claims against a union, however, are "analyzed differently from claims against employers," however, because claims against labor organizations are "grounded in the union's duty of fair representation ("DFR") to its members." *Klaper v. Cypress Hills Cemetery,* No. 10-CV-1811, 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012). Specifically, to properly allege a

---

[7] Even if it were apparent from the face of the complaint that Plaintiff had not exhausted administrative remedies, the Court would not be deprived of subject matter jurisdiction, as Defendants argue. A plaintiff's failure to exhaust administrative remedies does not deprive a federal court of subject matter jurisdiction. *See Zipes v. Trans World Airlines*, 455 U.S. 385, 398 (1982); *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 550–52 (2019); *see also Fowlkes*, 790 F.3d at 385 (although there have been passing descriptions in Second Circuit jurisprudence of Title VII requirements as "jurisdictional," it is consistently held that administrative exhaustion is not a jurisdictional prerequisite). The same rule applies for ADA claims because the ADA expressly adopts the enforcement scheme of Title VII by reference. *See* 42 U.S.C. § 12117(a); *see also Angotti v. Kenyon & Kenyon*, 929 F. Supp. 651, 653 (S.D.N.Y. 1996); *Predun v. Shoreham-Wading River Sch. Dist.*, 489 F.Supp.2d 223, 229 (E.D.N.Y. 2007) (the formal charge filing requirement under the ADA is not jurisdictional and is subject to equitable tolling).

12

Title VII or ADA claim against a union, a plaintiff must allege facts showing that it breached its duty of fair representation to the plaintiff, and that the union's actions were "motivated by discriminatory animus." *Bledsoe*, 2024 WL 989845, at *2 (citing *McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d Cir. 2010)).[8]

Plaintiff fails to adequately plead either a Title VII or ADA claim under this standard. As analyzed above, Plaintiff has not alleged a viable claim for a breach of the duty of fair representation. Even assuming *arguendo* that Plaintiff could establish a breach of the duty of fair representation, there also are no allegations in the complaint that Defendants were "motivated by discriminatory animus" on the basis of membership in a Title VII protected class or on the basis of any disability. *McIntyre*, 380 F. App'x at 49. Although Plaintiff claims that the union "simply failed and recklessly, absolutely did nothing with the doctor notes that [he] had provided," and failed to satisfactorily perform "the duties that was required of any union Representative," ECF No. 1-1 at 6, such contentions—even construed in the light most favorable to Plaintiff—do not constitute plausible allegations of discriminatory or retaliatory animus. Indeed, Second Circuit courts have consistently dismissed similar ADA claims against unions where the plaintiff has failed to provide evidence of discriminatory animus. *See, e.g.*, *Ayazi,* 2011 WL 888053, at *24 (dismissing claims against union where plaintiff alleged a union representative said she was "too militant" and holding that "simple allegations of hostility by a Union official are not sufficient" to

---

[8] Some courts utilize a "more stringent" three-part test for Title VII and ADA claims against labor *unions* taken from *Bugg v. International Union of Allied Industrial Workers, Local 507*, 674 F.2d 595, 599 n.5 (7th Cir.1982). *See Klaper*, 2012 WL 959403, at *7 n.8. Under the *Bugg* test, in addition to showing that the union breached its duty of fair representation and that it was motivated by discriminatory animus, the plaintiff must also show that he had a valid claim against the employer either pursuant to a collective bargaining agreement or statute. *See Ayazi v. United Fed'n of Tchrs., Loc. 2*, No. 99 CV 8222 (CLP), 2011 WL 888053, at *12 (E.D.N.Y. Mar. 14, 2011) (describing the *Bugg* test); *see also Goldvekht v. United Fed'n of Tchrs.,* No. 08-CV-1494, 2009 WL 129495, at *3 (E.D.N.Y. Jan. 20, 2009). The *Bugg* test has not been adopted by the Second Circuit, and the Court agrees with those district courts that have expressed skepticism that it governs here. *See, e.g.*, *Goldvekht*, 2009 WL 129495, at *3 n.1; *Smith v. AFSCME Council 4*, No. 3:08–CV–1735 (RNC), 2012 WL 3580285, at *15 (D. Conn. Aug. 17, 2012). In any event, as discussed above, Plaintiff fails even the more lenient test.

13

show discriminatory intent); *Jiggets v. Allied Int'l Union*, No. 07 11572 (JSR) (RLE), 2010 WL 2158331, at *5–6 (S.D.N.Y. Mar. 17, 2010) (plaintiff's claim that union's representation at a hearing was inadequate and dissatisfaction with the failure to arbitrate did not constitute discriminatory animus).

For these reasons, Defendants' motion to dismiss Plaintiff's Title VII and ADA claims is granted.[9]

### 3. *Espinosa*

Plaintiff's Title VII and ADA claims against Defendant Espinosa fail for the additional reason that individuals are not subject to personal liability under either statute. First, individuals cannot be liable under Title VII. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004); *see also Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). Similarly, individuals may not be held personally liable under the ADA. *Baldwin v. N.Y.C. Dep't of Youth & Cmty. Dev.*, 11 Civ. 7744 (PGG), 2012 WL 13034914, at *2 (S.D.N.Y. Dec. 28, 2012) (collecting cases); *see also Plumley v. New York State*, 389 F.Supp.2d 491, 499 (S.D.N.Y. 2005) ("There is no shortage of authority indicating that, in light of the parallel language in the ADA and Title VII, neither covers individual defendants."); *Gomez v. New York City Police Dep't*, 191 F.Supp.3d 293, 302–03 (S.D.N.Y. 2016) (same).

As a result, Defendants' motion to dismiss the Title VII and ADA claims against Espinosa is granted. Because it would be futile for Plaintiff to amend claims against Espinosa that cannot

---

[9] Although the basis for dismissal of these claims against UFCW is a pleading deficiency, the Court will not afford Plaintiff leave to amend. To start, Plaintiff failed to oppose the motion to dismiss, despite having more than six months to do so and being given two extensions of time to file a response, *see* ECF Nos. 39, 46. Plaintiff thus has not argued the claims should not be dismissed, and has not requested leave to amend. Nor do the facts alleged in the complaint suggest that Plaintiff is a member of a protected class, much less that the union acted with discriminatory animus on this basis. And even generously assuming Plaintiff has plausibly alleged he is disabled for purposes of the ADA, the facts again fail to allege any connection between the union's actions (or inactions) and Plaintiff's alleged disability. For these reasons, the Court denies leave to amend these claims against UFCW.

be brought against him, the Title VII and ADA claims against him are dismissed without leave to amend.

    C. <u>Breach of the Collective Bargaining Agreement</u>

The Court interprets the complaint to also allege an independent breach of contract claim against Defendants for alleged violations of Article 11, Section 5 and Article 25 of the CBA. *See* ECF No. 1 at 4 (seeking damages for "violating [A]rticle 11 section 5 and [A]rticle 25"). A breach of contract claim alleging breach of a CBA is governed by § 301 of the Labor Management Relations Act. *Washington v. Garage Mgmt. Corp.*, No. 11 Civ. 3420 (CM), 2012 WL 4336163, at *11 (S.D.N.Y. Sep. 20, 2012); *see also Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 219 (1985). Section 301 authorized the courts to form "a body of federal law for the enforcement of these collective bargaining agreements." *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990) (quoting *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 451 (1957)). Thus, "only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements." *Id.* at 368. Federal law has established that for an employee to bring a breach of contract claim based on the CBA against a union, "he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees." *Scales v. Hotel Trades Council of N.Y. Loc. 6*, No. 23-873-cv, 2025 WL 883053, at *3 (2d Cir. Mar. 21, 2025) (summary order) (quoting *United Steelworkers*, 495 U.S. at 374). Here, Plaintiff points to no specific language in the CBA creating an independent duty enforceable against UFCW. Plaintiff merely broadly alleges that Article 11, Section 5 and Article 25, Section 4 were "violat[ed]." ECF No. 1 at 4.

Article 11, Section 5(A) of the CBA provides that an employee who cannot work due to sickness or accident will be reinstated as long as they can resume normal duties within six months, and if they cannot, "the Employer and Union shall meet to discuss." *See* ECF No. 1-1 at 37. Even if the Court reads that provision to create a duty enforceable against UFCW beyond the duty of fair representation, there are no allegations that UFCW did not meet with the employer to discuss his termination. Quite the opposite: it appears the union contacted the employer seeking to have Plaintiff reinstated or to have his leave "back dated." ECF No. 1-1 at 12. As such, there is no breach of this section.

There is also no breach of Article 25 of the CBA. Article 25, Section 4(P2) states in part:

> The parties shall endeavor to agree upon an impartial arbitrator, selecting between the Labor Relations Connection or the American Arbitration Association. In the event that they are unable to agree within ten (10) days after the request for arbitration has been made in accordance with the foregoing, then the arbitration will be the Labor Relations Connection…

*See id.* at 29. The language indicates that the obligation to "agree upon an impartial arbitrator… within ten (10) days after the request for arbitration" only goes into effect once a demand for arbitration has been made. Therefore, because the facts alleged in the complaint do not speak to any requirement to demand an arbitration, there can be no breach of this section.

Accordingly, to the extent that Plaintiff raises breach of contract claims for breach of the CBA against Defendants, such claims are dismissed without leave to amend.

D. Unfair Labor Practice Claim

Lastly, to the extent that Plaintiff makes an unfair labor practice claim under Section 8 of the National Labor Relations Act, *see* ECF No. 1-1, ¶ 17, it is dismissed without leave to amend because this claim falls under the "exclusive jurisdiction of the National Labor Relations Board." *Hylton v. RY Mgmt*, No. 05 cv 6710(GBD), 2006 WL 2088196, at *2 (S.D.N.Y. July 25, 2006)

16

(citing *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959).

## IV. CONCLUSION

For the reasons described herein, Defendants' motion to dismiss, ECF No. 34, is GRANTED. Plaintiff's complaint is thus DISMISSED without leave to amend.

The Clerk is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut, this 1st day of August, 2025.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE